**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000840
16-JUN-2026
07:59 AM
Dkt. 103 SO**

NO. CAAP-24-0000840


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
SONNY E. PUERTO, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPC-21-0000436)


SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and Wadsworth, JJ.)


Defendant-Appellant Sonny E. Puerto (**Puerto**) challenges his conviction for first-degree Electronic Enticement of a Child.[1]  We affirm.

Puerto appeals from the Circuit Court of the Third Circuit's (**Circuit Court**)[2] February 6, 2025 "Judgment of

---

[1]    A person is guilty of electronic enticement of a child in the first degree under Hawaii Revised Statutes (**HRS**) § 707-756 (2014) if the person "[i]ntentionally or knowingly communicates" while using an electronic device, "[w]ith another person who represents that person to be under the age of eighteen years[,]" "[w]ith the intent to promote or facilitate the commission of a felony[,]" and "[i]ntentionally or knowingly travels to the agreed upon meeting place at the agreed upon meeting time[.]"

[2]    The Honorable Peter K. Kubota presided.

Conviction and Sentence" (**Judgment**), which sentenced him to a ten-year term of incarceration.  Plaintiff-Appellee State of Hawai'i (**State**)'s charge of Puerto with Electronic Enticement of a Child in the First Degree stemmed from "Operation Keiki Shield," intended to "identify" and "apprehend individuals who are willing to travel in order to engage" in sexual activity with children.  As part of the operation, an undercover agent posed as a 13-year-old female and exchanged sexually explicit messages with Puerto on a Meet Me application and text, during which Puerto agreed to meet with the minor and was subsequently arrested at the designated meeting place.

On appeal, Puerto raises five points of error (**POEs**), as follows:  **(1)** the Circuit Court's failure to suppress additional statements Puerto made, the contents of a brown paper bag, and evidence from Puerto's cell phone; **(2)** the Circuit Court's denial of Puerto's during-trial Motion for Judgment of Acquittal (**MJOA**) and post-trial MJOA; **(3)** the Circuit Court's ruling that Puerto's texted statements to the undercover agent were made voluntarily; **(4)** prosecutorial misconduct in the "closing/rebuttal arguments"; and **(5)** the Circuit Court's denial of Puerto's post-verdict motion for mistrial.[3]

**(1)** Regarding the suppression of additional statements Puerto made, Puerto contends the "block information" or "basic identification questions[,]" which included Puerto's cell

---

[3]      Puerto's Amended Opening Brief does not comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) and (b)(7), and contains a combined POE section and argument section.  The POEs do not clearly or consistently cite the record identifying where the alleged errors occurred and where the alleged errors were "brought to the attention of the court or agency."  See HRAP Rule 28(b)(4)(ii) and (iii).  While HRAP Rule 28(b)(4) provides that "[p]oints not presented in accordance with this section will be disregarded," we will address the POEs for which the remainder of the brief provides the necessary information to identify Puerto's arguments under the public policy favoring resolution of cases on their merits.  See Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012).

number, should have also been suppressed. The State responds that this request to suppress "block information" was not made below and should be waived.

The record of the March 6, 2024 suppression hearing reflects that Puerto did not request the suppression of such "block information," and Puerto's argument is waived. See State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]" (citations omitted)).

Regarding the suppression of the brown paper bag contents through "Detective Kagimoto" and evidence from Puerto's cell phone, Puerto's Amended Opening Brief does not indicate whether the evidence of the paper bag contents and his cell phone content for which suppression was denied, was admitted against him at trial. The State claims that because these items were never admitted at trial, any such alleged error was harmless. This argument is persuasive. Because Puerto has not indicated that the above-referenced evidence he challenged in his motion to suppress was actually used and admitted against him at trial, any purported error is harmless. See State v. Apo, 82 Hawai'i 394, 403, 922 P.2d 1007, 1016 (App. 1996) ("The admission of illegally obtained evidence in a criminal trial following the erroneous denial of a motion to suppress is subject to the harmless error rule." (citation omitted)).

**(2)** Puerto points to an alleged lack of evidence and allegedly improperly admitted evidence to argue that his MJOA should have been granted, because the State "did not establish adequate evidence" of Puerto's "intent to meet with the supposed minor *for the purpose of committing a felony or other crime*";

and because the text messages should have been suppressed for "lack of foundation" during trial.

We review the denial of an MJOA using the same standard a trial court applies, of whether, viewing the evidence in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. State v. Angei, 152 Hawaiʻi 484, 492, 526 P.3d 461, 469 (2023).

Here, the record reflects evidence sufficient to support a prima facie case for a reasonable mind to fairly conclude that Puerto agreed to meet the undercover agent, who was posing as a 13-year-old minor, after exchanging sexually explicit messages[4] with the requisite "intent to promote or facilitate the commission of a felony" of first-degree or third-degree sexual assault under HRS §§ 707-730(1) and/or 707-732(1).[5] See id. As such, the denials of the MJOAs were not erroneous.

**(3)** Puerto challenges both the Circuit Court's ruling that Puerto's statements in his text messages to the undercover agent were voluntary, and the timing and circumstances of the ruling. Puerto argues that the Circuit Court erred when it "did not fully decide" the admissibility of the text messages "until

---

[4]     The messages included Puerto: stating that he had "condoms at home"; asking the minor if she was "down to hook up" and stating that she could "suck" his "dick" and he could "eat" her "pussy"; and asking the minor if she was a "virgin" and stating that he was "Filipino" and "[n]ot too big."

[5]     HRS § 707-730(1)(b) (2014 & 2021 Supp.) provides that a person "commits the offense of sexual assault in the first degree" if a person "[k]nowingly engages in sexual penetration with a person who is less than fourteen years old[.]"

HRS § 707-732(1)(b) (2014 & 2021 Supp.) provides that a person "commits the offense of sexual assault in the third degree" if a person "[k]nowingly subjects to sexual contact a person who is less than fourteen years old or causes such a person to have sexual contact with the actor[.]"

just prior to [the undercover agent] taking the stand"; and it did not allow Puerto "proper notice" to "properly respond" when it "allowed the State" to "make an oral motion."  The State responds that Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 12(b) allows pretrial motions to be "written or oral at the discretion of the judge"; it filed a memorandum "addressing this issue well in advance, on June 12, 2024"; and that Puerto "cannot complain" he was "unprepared to respond," where Puerto also "raised the issue in his motion in limine to exclude the text messages[.]"

Here, Puerto cites no authority that required the State file a written HRE Rule "104/404(b)" motion prior to trial.  See HRPP Rule 12(b) ("Motions may be written or oral at the discretion of the judge.").  The record reflects that the State did raise the issue of the admissibility of Puerto's statements to the undercover agent as early as June 12, 2024, in its Motion to Determine Voluntariness.  Puerto also raised an issue regarding "[s]tatements" made by Puerto "to police or others" in his June 21, 2024 Motion in Limine.  The Circuit Court deferred a final ruling on the admissibility of the text messages until trial, which it had the discretion to do, and the ruling was made on July 24, 2024, during the undercover agent's trial testimony.  See HRPP Rule 12(e) (conferring discretion upon the trial court to order that a ruling on a pretrial motion not determined before trial may "be deferred for determination at the trial" or "after verdict").

As for Puerto's challenge to the Circuit Court's ruling that his text messages were voluntarily made, Puerto does not present argument as to why the text messages between him and the undercover agent were not made "voluntarily."  See HRAP Rule 28(b)(7).  Rather, it appears that Puerto is arguing that his "foundation objection" should have been "sustained" because the

5

State failed to lay foundation that Puerto was the actual sender of the text messages.  Puerto presents no legal authority regarding his lack-of-foundation argument, however, and we do not address it.  <u>See</u> <u>id.</u>

**(4)** Puerto argues there were three instances of prosecutorial misconduct during closing and rebuttal argument, as follows: (a) the prosecutor's reference to "Smirnoff Ice and Starburst when that information was not properly in evidence"; (b) the prosecutor's statement, "Entrapment?  Really?" which improperly discredited Puerto's credibility; and (c) the prosecutor's improper burden shifting of "the elements/ requirements of entrapment."

As to the "Smirnoff" and "Starburst" references, the record reflects that the text messages between Puerto and the undercover agent, in evidence as State's Exhibit 134, specifically mention "Smirnoff" and "Starbust."  Puerto's argument that these references were not in evidence and thus improper, lacks merit.

As to the second prosecutorial misconduct contention, Puerto asserts: "[t]he prosecutor's argument of 'Entrapment, [r]rreeeaaalllyyy' amounted to misconduct and an impermissible attack of defense counsel's character/credulity [sic]."  Citing <u>State v. Cardona</u>, 155 Hawai'i 23, 556 P.3d 369 (2024), Puerto argues that the prosecutor's rebuttal, which started with "Entrapment, rrreeeaaalllyyy?" constituted prosecutorial misconduct because "such commentary by the prosecutor served only to challenge [Puerto's] credibility."  We note that Puerto's claim that the words were stated "with an exaggerated tone and drawing out the word really" is not reflected in the transcript, which states: "Entrapment?  Really?"  The record does not include any audio.  Thus, Puerto's argument regarding

the prosecutor's tone and the drawn-out "really" as improper "commentary by the prosecutor" is not supported by the written transcription record provided for our review.

As to the final burden-shifting contention, Puerto specifically points to pages 35-40 of the July 30, 2024 trial transcript to support his argument that:

> [d]uring her rebuttal closing, the prosecutor improperly burden shifted the elements/requirements of entrapment by arguing/implying to the jury that it was Defendant's burden to prove the two elements of entrapment beyond a reasonable doubt, as opposed to Defendant's burden to establish by a preponderance of the evidence that entrapment may have existed and then for the State to have to disprove that evidence by proof beyond a reasonable doubt.

Puerto does not identify the exact statement(s) by the prosecutor in these six pages that allegedly constitute improper burden-shifting that "it was [Puerto]'s burden to prove the two elements of entrapment beyond a reasonable doubt, as opposed to . . . by a preponderance of evidence." From our review of these six pages, the only statement that appears to reference a burden of proof for the entrapment defense is the following: "The State has proved beyond a reasonable doubt that the defendant was not entrapped." Puerto presents no argument or legal authority addressing how this single statement that corresponds to his POE constitutes prosecutorial misconduct. See HRAP Rule 28(b)(7).

**(5)** Puerto advances two arguments challenging the denial of the motion for mistrial. We conclude both are waived.

First, Puerto argues that the detective's testimony "concerning the contents of the brown paper bag" "required a mistrial because it prejudiced [Puerto] and tainted the minds of the jurors" despite the curative instruction the Circuit Court gave. Puerto contends that his assertion in this regard is

7

"supported" by a juror's "audio message sent to [defense counsel]" that was "admitted into evidence post-trial," which indicated that "the jury did consider the alcohol and candy" and "[i]t was a problem."  Puerto's characterization of the "problem" lacks sufficient explanation and context, and is difficult to follow.  The State responds that Puerto's contention in this regard should be waived for lack of any record references regarding where the alleged error occurred and how it was preserved; and that even if not waived, the record already contains evidence of text messages about Puerto purchasing alcohol and candy, even without the detective's testimony.  We agree that this argument is waived for lack of record references required under HRAP Rule 28(b)(4) and (b)(7).  In any event, as noted supra, the references to the "Smirnoff" alcohol and "Starburst" candy are already in the trial evidence, within the text messages in Exhibit 134.

Puerto's second argument regarding the mistrial motion is that the State "fail[ed] to disclose and turn over evidence allegedly collected from [Puerto]'s cell phone."  Puerto claims that the State "violate[d] the State's . . . duty to disclose discovery" to Puerto, where Detective Kagimoto testified that the police "received an external hard drive."  The State contends that Puerto's argument "was not presented to the [C]ircuit [C]ourt at all[.]"  We note that Puerto provides no record references for where and how he preserved this alleged error.  See HRAP Rule 28(b)(4)(iii).  The record does not appear to reflect that Puerto raised this argument below, and it is waived.  See Moses, 102 Hawaiʻi at 456, 77 P.3d at 947.

For the foregoing reasons, we affirm the Circuit Court's February 6, 2025 Judgment.

DATED:  Honolulu, Hawaiʻi, June 16, 2026.

On the briefs:

Matthew A. Sylva,
for Defendant-Appellant.

Nathan A. Wersal,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge